# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IGNACIO PEREZ,**<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>**INDIAN HARBOR INSURANCE COMPANY, ET. AL.,**<br><br>　　　　　Defendants. | CASE NO. 4:19-cv-07288-YGR<br><br>**ORDER: (1) GRANTING MOTION TO DISMISS FOR LACK OF JURISDICTION; (2) DENYING MOTION TO DISMISS COMPLAINT AND/OR STAY CASE; (3) GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE PORTION OF COMPLAINT AND EXHIBITS RE: MEDIATION MATERIALS**<br><br>Re: Dkt. Nos. 11, 13, 14 |

In the related matter, *Perez v. Rash Curtis & Associates*, No. 16-cv-03396-YGR, (N.D. Cal.) ("*Perez I*"), a jury verdict was entered that each member of the class shall recover from defendant the amount of $500 per call made in violation of the Telephone Consumer Protection Act ("TCPA"), for an aggregate award in favor of the class of over $267 million. (Dkt. No. 347.) On October 25, 2020, the Court approved the October 11, 2019 assignment, which assigned Rash Curtis & Associates' ("Rash Curtis") bad faith claim against its insurer, Indian Harbor Insurance Company ("Indian Harbor"). (Dkt. No. 392.)

In this action, Perez is now seeking to recover monies against Indian Harbor and its parent companies, XL America, Inc. ("XL America"), and XL Group Ltd. ("XL Group," and collectively, "XL entities") based on a breach of contract claim. (*See* Dkt. No. 1 at 5.) Perez brings one count of a breach of contract – a breach of the good faith and fair dealing provision – and seeks to recover the jury award from *Perez I* plus interest. (*Id.* at 4-5.)

Before the Court are three motions filed by defendants, including: (1) a motion to dismiss the XL entities for lack of personal jurisdiction (Dkt. No. 11); (2) a motion to dismiss the complaint and/or stay the case (Dkt. No. 13); and a motion to strike a portion of the complaint and exhibits in regards to mediation materials. (Dkt. No. 14.)

Having carefully reviewed the record, the papers submitted on each motion, the parties' oral arguments at the hearing held on February 26, 2020, and for the reasons set forth more fully below, the Court **HEREBY ORDERS** as follows: (1) the motion to dismiss for lack of personal jurisdiction is **GRANTED**; (2) the motion to dismiss and/or stay is **DENIED**; and (3) the motion to strike is **GRANTED IN PART** and **DENIED IN PART**.

In order to expedite the issuance of this Order, the Court assumes familiarity with the facts.

# I.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION[1]

Defendants aver that dismissal of the XL entities is appropriate under Rule 12(b)(2) because this Court lacks personal jurisdiction over the XL entities. In the alternative, defendants assert that dismissal is also appropriate under Rule 12(b)(5) because Perez did not properly serve the XL entities as required under Rule 4.[2]

## A.   Legal Standard

Under Rule 12(b)(2), a defendant may be dismissed if the court lacks personal jurisdiction over it. Plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over parties, looking to the state's long arm statute regarding service of summons. *See* Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process effective to establish personal jurisdiction over defendant subject to jurisdiction in the state court where the district is located); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (same). California's long-arm statute, in turn, permits exercise of personal jurisdiction to

---

[1] Defendants request judicial notice of filings in a matter involving the XL entities, *Allegis Inv. Services, LLC v. Arthur J. Gallagher & Co.*, 2:17-CV-515-DAK, 2017 WL 6512240 (D. Utah Dec. 19, 2017), (Dkt. No. 22) as well as Delaware state documents regarding XL Group. (Dkt. No. 12.) The Court **GRANTS** these requests for the purposes of this motion. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (quoting in part Fed. R. Evid. 201) (noting that courts may take judicial notice of documents or information that "can be accurately and readily determined from sources whose accuracy cannot be questioned," including "undisputed matters of public record"); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[2] Because, as discussed, the Court concludes that the XL entities should be dismissed for lack of personal jurisdiction, this Order does not delve into these arguments relating to Rule 12(b)(5).

2

the full extent permitted by federal due process. *Id.*; *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017). The party filing the complaint bears the burden to establish jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

**B.      Analysis**

Here, the parties agree that the Court does not have general jurisdiction over the XL entities, but dispute the existence of specific jurisdiction. The parties do not dispute the well-known test for determining specific jurisdiction. Thus:

Specific jurisdiction "exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quotations and citations omitted). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As the Supreme Court explained, the inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant centers on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. The plaintiff cannot be the only link between the defendant and the forum; rather, the defendant's conduct must form the necessary connection with the forum in order to establish jurisdiction. *Id.* at 285.

In the Ninth Circuit, three requirements must be met for a court to exercise specific jurisdiction over a nonresident defendant: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

1  jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Yahoo!*
2  *Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006);
3  *Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004) (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th
4  Cir. 1987)).

5        Based on the foregoing test, the Court concludes that it lacks specific jurisdiction over the
6  XL entities. The crux of the analysis turns on the first prong: that there are activities or
7  transactions that equate with purposeful availment of the forum state, California. Here, based on
8  the record, the Court notes the following weighing against a finding of purposeful availment:

- Both companies are holdings companies, not insurance companies;
- Neither company issued nor underwrote the policy at issue;
- Neither company defended nor participated in the defense of Rash Curtis in *Perez I*;
- Neither company conducts business in California nor owns real property in California;
- Neither company has employees in California;
- Neither company is registered or qualified to do business in California; and
- As of 2007, XL Group conducts no business whatsoever in the United States and is a Bermuda Holding company.

17       Based on the foregoing, the Court concludes that Perez's threadbare allegations that the XL
18 entities, either individually or jointly, were involved with the underwriting, insurance, or review of
19 investor claims are rebutted by the XL entities' affidavit and unsupported by anything in the
20 record. This action does not arise out of activities directed at California by the XL entities because
21 they did not issue the Indian Harbor policy, are not the insurers of that policy, and do not
22 administer that policy. The allegations and the record are clear that Indian Harbor is the issuer of
23 and insurer under the policy. Thus, this action does not arise out of activities allegedly directed at
24 California by the XL entities.

25       Perez's arguments to the contrary do not persuade. Specifically, Perez advances four
26 arguments in support of personal jurisdiction: (1) that an employee for XL America and XL
27 Group, Adam Williams, appeared and controlled Rash Curtis' defense in *Perez I*; (2) "XL Caitlin"
28 appears on the first page of the policy; (3) XL America appears on every single page of the policy;

4

and (4) that Indian Harbor was acting as an agent on behalf of the XL entities.

First, there is no evidence in the record that Williams was an employee of either XL America or XL Group. Indeed, there is at least some evidence to the contrary – that Williams is not an employee of XL Group. (*See* Dkt. No. 21-1 at 2 (Mim's Decl.).) Instead, there is nothing in the record suggesting that Williams did any work for or behalf of an entity other than Indian Harbor in relation to the *Perez I* litigation.

Second, the "XL Caitlin" designation does not suggest that there is specific jurisdiction in this matter. As another district court has found, "XL Catlin is a brand name not a legal entity." *Allegis*, 2017 WL 6512240, at *1. Indeed, there is evidence in the record evidencing that XL Caitlin is a brand name. (*See* Dkt. No. 21-1 at 2 (Mim's Decl.).) And, the "XL Caitlin" designation aside, the insurance policy is unambiguously issued by Indian Harbor, not XL Catlin, despite the "XL Designation" appearing on the first page. Specifically, the policy states that reporting must be to the "Company," which is defined as Indian Harbor. (Dkt. No. 1 at 41, 50.)

Third, the "XL America" references in the policy do not confer personal jurisdiction over XL America in this matter. "XL America" appears on every single page of the policy, but the wording provides: "© 2012 X.L. America, Inc. All Rights Reserved. May not be copied without permission." (*See generally* Dkt. No. 1 at 27-63.) In an analogous circumstance, a court has found that such language does not confer personal jurisdiction over such entity. *See Allegis*, 2017 WL 6512240, at *3 ("references to trade names, copyright holders, or other entities on or in conjunction with the policy forms will not be taken out of context" to establish personal jurisdiction). Other courts have also concluded that insignificant contacts, such as a trade name on a policy or correspondence, does not subject holding companies or insurer-affiliated entities to personal jurisdiction. *See, e.g., Van Dusseldorp v. Continental Casualty Co.*, No. CIV16-5073-JLV, 2017 WL 4004421, at *3-4, 7-8 (D.S.D. Sept. 11, 2017); *Buesing v. National Union Fire Ins. Corp.*, No. 3:17-CV-01426-H-JMA, 2017 WL 3525299, at *3 (S.D. Cal. Aug. 15, 2017). Similarly, the references in the privacy policy required by the Gramm-Leach Bliley Act, a federal statute, do not give the Court personal jurisdiction over XL America where such references apply generally to all companies, of which Indian Harbor is a subsidiary, and there is nothing in the

5

record that XL America itself did or would do anything with respect to the collection of information by Indian Harbor or other subsidiaries.

Fourth, Perez's arguments – that both XL America and XL Group are subject to specific jurisdiction under agency theory – do not persuade. "While *Daimler* voided our agency approach for imputing contacts for the purpose of general jurisdiction, it left open the question of whether an agency relationship might justify the exercise of specific jurisdiction." *Williams*, 851 F.3d at 1023 (9th Cir. 2017). "Assuming . . . that some standard of agency continues to be relevant to the existence of *specific* jurisdiction." *Id*. at 1024 (quotations omitted, emphasis in original). After *Daimler* and *Williams*, district courts within the Ninth Circuit have adopted a more traditional test for agency to establish specific jurisdiction, requiring that an agent act "on behalf of" and "subject to [the principal's] control in the forum." *See Delacruz v. Serv. Corporation Int'l*, 1:18–cv–00154–LJO–EPG, 2018 WL 2287962, at *7 (E.D. Cal. May 18, 2018).

Here, Perez's arguments are solely that: Indian Harbor was subject to both XL America and XL Group's control; Indian Harbor did not process or handle Rash Curtis' claims; and the policy paperwork were written by XL America and XL Group. In other words, Perez avers that Indian Harbor acted as a conduit for XL America and XL Group to operate in this jurisdiction. However, as noted above, Perez' evidence for such statements is lacking and is contradicted by other evidence put forward by XL entities, where Indian Harbor was the sole company identified in the policy, and is the only company that – based on the current record – had any involvement in the *Perez I* litigation.

Thus, having found Perez's arguments without merit, the Court concludes that it lacks specific jurisdiction over the XL entities. The Court notes that this holding is consistent with other district courts considering the XL entities with respect to insurance contracts issued by Indian Harbor. *See generally*, *Allegis*, 2017 WL 6512240.

Finally, Perez avers that to the extent that specific jurisdiction is found to be lacking, he requests an opportunity to conduct jurisdictional discovery. "An order of jurisdictional discovery is not to be had for the taking." *Miller v. Peter Thomas Roth, LLC,* No. C19-00698WHA, 2019 WL 1507767, at *5 (N.D. Cal. April 5, 2019). Indeed, "'[w]here a plaintiff's claim of personal

6

1   jurisdiction appears to be both attenuated and based on bare allegations in the face of specific

2   denials made by defendants'," even limited discovery need not be permitted. *Terracom v. Valley*

3   *Nat'l Bank,* 49 F. 3d 555, 562 (9th Cir. 1995).  Courts should deny jurisdictional discovery where

4   "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for

5   jurisdiction," *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F. 2d 406, 430 n.24 (9th Cir.

6   1977), or where the request is "based on little more than a hunch that it might yield jurisdictionally

7   relevant facts." *Boschetto v. Hansing,* 539 F. 3d 1011, 1020 (9th Cir. 2008).

8       Here, Perez has not identified specifically what he would hope to uncover through

9   additional jurisdictional discovery that has not already been provided in the prior litigation or in

10  the briefing on this motion.  The Court therefore **DENIES** this request for jurisdictional discovery.[3]

11      Accordingly, in light of the foregoing analysis, the Court **GRANTS** the motion to dismiss

12  for lack of jurisdiction.

13  **II.  MOTION TO DISMISS, OR ALTERNATIVELY, TO STAY**

14      Defendants bring a motion to dismiss, or, in the alternative, to stay the case because

15  defendants aver that there is no final judgment entered in the *Perez I* litigation.  Perez opposes the

16  motion, and asserts that dismissal and a stay is not warranted here because there was a final

17  judgment in the *Perez I* litigation.

18      The legal standards for a Rule 12(b)(6) motion are not in dispute.  With respect to a motion

19  to stay, it is well-settled that "the power to stay proceedings is incidental to the power inherent in

20  every court to control the disposition of the causes on its docket with economy of time and effort

21  for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

22  Whether to issue a stay in a case is based on the trial court's sound discretion and basic principles

23  of equity, fairness, efficiency, and conservation of judicial resources.  *See Filtrol Corp. v.*

24  *Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972); *see also Leyva v. Certified Grocers of Cal. Ltd.*, 593

25  F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own

---

[3] To the extent that later discovery demonstrates the existence of personal jurisdiction over either XL America or XL Group, Perez may seek leave to amend to add the entities as parties to this litigation.

7

1    docket and the fairest course for the parties to enter a stay of an action before it, pending

2    resolution of independent proceedings which bear upon the case.").

3          In contemplating a stay, a court should consider (A) the possible damage which may result

4    from the granting of a stay; (B) the hardship or inequity which a party may suffer as a result of

5    denial of a stay; and (C) the orderly course of justice measured in terms of the simplifying or

6    complicating of issues, proof, and questions of law which could be expected to result from a

7    stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*,

8    300 F.2d 265, 268 (9th Cir. 1962)).

9          In general, a bad faith insurance claim must have a final judgment in the underlying

10   lawsuit in order to confer a claim and jurisdiction. *See Mercado v. Allstate Ins. Co.*, 340 F.3d 824,

11   827 (9th Cir. 2003) ("It is only after a litigated excess judgment is obtained that an insurer's

12   refusal to settle becomes actionable."); *Hamilton v. Maryland Cas. Co.*, 27 Cal. 4th 718, 725

13   (2002) (failure to settle claim does not mature until an excess judgment is entered against the

14   insured); *Safeco Ins. Co. v. Superior Court*, 71 Cal. App. 4th 782, 789 (1999) (insurer's refusal to

15   settle not actionable until final excess judgment obtained); *Doser v. Middlesex Mutual Ins. Co.*,

16   101 Cal. App. 3d 883, 891 (1980) (assignees could not assert bad faith claim against insurer in

17   absence of final judgment); *Finkelstein v. 20th Century Ins. Co.*, 11 Cal. App. 4th 926, 929-30

18   (1992) (without judgment in excess of the policy limits, insured's cause of action never matured);

19   *Wolkowitz v. Redland Ins. Co.,* 112 Cal. App. 4th 154, 166 (2003) (bankruptcy court order

20   allowing claim against insured's estate, pursuant to settlement agreement, was not a judicial

21   determination of insured's liability to claimant, and could not form premise of insurer's bad faith

22   failure to settle); *RLI Ins. Co. v. CNA Cas. of California*, 141 Cal. App. 4th 75, 82-83 (2006)

23   (excess insurer cannot sue the primary insurer for failure to settle within the limits of the primary

24   insurer's policy, absent an excess judgment against the insured).

25         A final judgment has been entered in the *Perez I* litigation. *See Perez I*, Dkt. No. 430

26   (amended final judgment); *see also* Dkt. No. 370 (initial final judgment). The crux of the dispute,

27   however, is whether a final judgment requires the exhaustion of all appeals in order to maintain a

28   claim for a breach of the good faith and fair dealing provision. Defendants cite authority

suggesting that a dismissal or a stay is warranted where parties are engaged in appeal of the judgment obtained in the trial court. *See Stafford v. Allstate Ins. Co.*, No. C 97-2493 FMS, 1997 WL 732486, at *2 (N.D. Cal. Nov. 19, 1997) (dismissing an assignee's bad faith complaint based on the absence of a final judgment, where the underlying judgment was vacated and on appeal); *Nationwide Ins. Co. v. Superior Court*, 128 Cal. App. 3d 711, 715 (1982) ("When a court speaks of a final determination of liability it has reference to a judgment that is final for res judicata purposes . . . not for purposes of appeal. The reason is apparent: unless the determination of liability and the amount of damages were finally determined in the res judicata sense, the insurer would not be collaterally estopped by the judgment from litigating in the third party action facts relating to the question of liability and damages."); *McKee v. National Union Fire Ins. Co.*, 15 Cal. App. 4th 282, 287 (1993) ("without a doubt, 'final' means after an appeal is concluded or the time within which to appeal has passed.").

    Defendants' arguments do not persuade.  First, as Perez points out, there is some California state authority suggesting that a suit may be commenced after the entry of a judgment, but before the finality of all appeals. *See Archdale v. American Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 478 (2007) ("We therefore hold that while an insured might file an action for breach of the implied covenant upon *entry* of the excess judgment, the insured also is entitled to await *finality* before bringing his action and, pending such finality, the running of the limitations period is tolled." (emphasis in original)).

    Second, and more significantly, "unlike California state court judgments, federal judgments like the one in [Perez]'s prior federal action are deemed final when entered, even if an appeal is pending." *Liu v. Levinson*, 17-cv--5384-JSW, 2018 WL 10604346, at *7 (N.D. Cal. May 11, 2018) (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006)).  This contrasts to California state law, where "a judgment is not final during the pendency of and until the resolution of an appeal." *Louen v. City of Fresno*, 1:04-cv-06556-OWW SMS, 2007 WL 2288321, at *3 (E.D. Cal. Aug. 8, 2007) (citing *Sosa*, 437 F.3d at 928).  Thus, because the *Perez I* litigation was before a federal court, and a final judgment was entered in that matter, the Court concludes – despite a pending appeal before the Ninth Circuit Court of Appeals – that there is a final judgment

sufficient to state a claim based on a breach of the good faith and fair dealing provision, and that a stay and a dismissal are not warranted.

Accordingly, the motion to dismiss, or, alternatively, to stay is **DENIED**.

### III.   MOTION TO STRIKE

The parties dispute whether materials used for or in connection with the mediation in the underlying *Perez I* litigation should be stricken from the allegations and exhibits of the complaint. Specifically, defendants aver that the confidentiality agreement that all participants signed – including Perez, Rash Curtis, and Indian Harbor – states that the mediation shall be subject to the provisions of California Evidence Code sections 1115, *et seq*, and that all statements and/or writings made for the purpose of, in the course of, or pursuant to the mediation shall be inadmissible in any civil proceeding, pursuant to California Evidence Code section 1119. Thus, defendants seek to strike the following: (1) Paragraphs 1 and 15 of the complaint; (2) paragraphs 15, 16, 17, 18, 20, 21, 22, 23, 26, 27, 30 and 32 of Exhibit 1 to the complaint; and (3) Exhibits I, J, K, M, and N to Exhibit 1 to the complaint.

#### A.   Legal Standard

Rule 12(f) allows a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. A court may grant a motion to strike where "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *In re Arris Cable Modem Consumer Litig.*, Case No. 17-CV-01834-LHK, 2018 WL 288085, at *5 (N.D. Cal. Jan. 4, 2018). The purpose of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sydney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

#### B.   Analysis

The confidentiality agreement provides:

> The mediation to which this agreement pertains shall be subject to the provisions of [California] Evidence Code sections 1115 et seq. All statements and/or writings (as defined by Evidence Code section 250) made for the purpose of, in the course of, or pursuant to the mediation or mediation consultation as defined by Evidence Code section 1115 shall be inadmissible in any civil proceeding pursuant to Evidence Code section 1119. This shall include the fact of mediation as well as

> all communications, negotiations or settlement discussions by and between all participants in the course of such mediation or mediation consultation. All participants agree that any such communications shall remain confidential pursuant to Evidence Code 1119(c).

(Dkt. No. 14-2 at (Williams Decl., Ex. A).)

Defendants aver that, based on the foregoing, the Court should respect the mediation participants' contractual choice of California law, and therefore strike the mediation materials. *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1450 n.7 (2007) ("If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention[.]"). Indeed, the Ninth Circuit has recently affirmed a district court's application and enforcement of the mediation confidentiality statutes pursuant to parties' mediation agreement that expressly adopted California law, where the insured brought an action against its insurer for breach of contract and bad faith for refusal to fund a settlement of the underlying shareholder class action against the insured. *See Apollo Educ. Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 784 F. App'x 500, 502 (9th Cir. 2019).

Having reviewed the agreement and the authority above, the Court agrees that the confidentiality agreement – as agreed to by the parties in the *Perez I* litigation – applies in this matter, and therefore California state's mediation confidentiality provisions guide the Court in its determination of whether the materials should be stricken. Perez's contentions to the contrary – that the agreement is null and void – do not persuade.[4]

California Evidence Code section 1119, encompassing the mediation confidentiality privilege, provides:

> (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> (b) No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative

---

[4] This is especially so where Perez's claim is brought as a contract claim, and not as a claim sounding in tort.

11

> adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
>
> (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential.

Cal. Evid. Code § 1119.

Further, California Evidence Code section 1122 sets forth limited exceptions for the admission of evidence produced during mediation, which provides, in relevant part:

> (a) A communication or a writing, as defined in Section 250, that is made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if any of the following conditions are satisfied:
>
> (1) All persons who conduct or otherwise participate in the mediation expressly agree in writing, or orally in accordance with Section 1118, to disclosure of the communication, document, or writing.
>
> (2) The communication, document, or writing was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally in accordance with Section 1118, to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation[.]

Cal. Evid. Code § 1122.

As the moving party, it is defendants' burden to prove that the disputed allegations and exhibits are protected by the mediation privilege. *See Wimsatt v. Superior Court*, 152 Cal. App. 4th 137, 160 (2007). "To establish whether a communication is protected by mediation confidentiality, the timing, context, and content of the communication must be considered." *Pac. Marine Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:13–CV–00992–AWI, 2015 WL 1565362, at *8 (E.D. Cal. Apr. 8, 2015). "Mediation confidentiality is to be applied where the writing, or statement would not have existed *but for* a mediation communication, negotiation, or settlement discussion." *Wimsatt*, 152 Cal. App. 4th at 160 (emphasis supplied). *See also Lappe v. Superior Court*, 232 Cal. App. 4th 774, 783 (2014) ("Notwithstanding the statutes' broad scope, the factual contents of a conversation or writing are not automatically deemed confidential simply because they are included in a mediation communication."). Even communications that would not have occurred "but for" a mediation are not necessarily confidential – the relevant context and purpose

12

of the communications must still be considered. *See, e.g. Pac. Marine Ctr., Inc.*, 2015 WL 1565362, at *7 ("Although the communications considered by the court in *Long Beach Memorial Medical Center* would not have occurred but-for the prior mediations, that did not *automatically* extend the scope of the mediation confidentiality under [CEC § 1119]. The same is true of the post-mediation communications in this case—the mere fact these communications arose as a result of the mediation and settlement does not mean they were made 'pursuant to' the mediation and are thus confidential." (emphasis in original)) (citing *Long Beach Memorial Med. Ctr. v. Superior Court*, 172 Cal. App. 4th 865, 875 (2009)). Settlement communications that coincide with other non-settlement communications, such as discovery or general litigation concerns, are not made "pursuant to" mediation – even if such communications are made temporally close to a mediation. *See id.* at *10 ("Beyond the temporal-scope limitations to the mediation confidentiality . . . [p]laintiffs have failed to establish the necessary nexus between the post-mediation communications sought by [defendant] and the confidential communications during the course of the mediation.").

Based on the above, the Court rules as follows with respect to each request to strike:[5]

- Paragraphs 1 and 15 of the complaint: **DENIED**. These paragraphs generally restate facts that can be gleaned from the *Perez I* public docket. These facts would not be subject to the mediation confidentiality privilege. To the extent that the statement references a

---

[5] The Court expressly notes that the rulings below regarding the striking of certain paragraphs and exhibits from the complaint is confined solely to the arguments raised in the motion to strike itself. The Court expressly reserves ruling on the issue of the overall admissibility and use of such documents and statements for the claims at issue; in other words, if a separate future showing regarding Perez's due process rights is made, the Court may rule differently. *See YS Garments v. Continental Cas. Co.*, Case No.: CV 17-03345 SJO (JEMx), 2018 WL 3830178, at *3 n.3 (C.D. Cal. July 13, 2018) ("Although [CEC § 1119] typically strictly precludes mediation discussion[s], such evidence may be introduced if necessary for a party to raise an adequate defense; barring such evidence may violate due process."); *Cassel v. Superior Court,* 51 Cal. 4th 113, 119 (2011) ("We must apply the plain terms of the mediation confidentiality statutes to the facts of this case *unless* such a result would violate due process, or would lead to absurd results that clearly undermine the statutory purpose.") (emphasis supplied). *See also Milhouse v. Travelers Commercial Ins. Co.*, 982 F. Supp. 2d 1088, 1108 (C.D. Cal. 2013) (holding that excluding parties' mediation statements "would have been to deny [defendant] of its due process right to present a defense.").

13

1    rejection of settlement offers and a refusal to negotiate, defendants do not demonstrate that
2    a nexus to or were made pursuant to any mediation.  With respect to defendants' walking
3    out of the mediation without making a settlement offer, non-communicative mediation
4    conduct is admissible under the California statutes.  *See Harman v. Golden Eagle Ins. Co.*,
5    Case No.: 17-cv-2328-AJB-MDD, 2018 WL 1791915, at *3 (S.D. Cal. Apr. 16, 2018)
6    ("Harman is correct, though, that the rule does not protect conduct – only communications
7    and writings."); *Lotes Co., Ltd. v. Hon Hair Precision Indus. Co., Ltd.*, No. C 11-01036
8    WHA, 2017 WL 282583, at *5 (N.D. Cal. Jan. 23, 2017) ("Lotes's bald assertion that all
9    conduct in the course of a mediation is necessarily communicative . . . is flat-out wrong.")
10   (internal quotation marks omitted).  Further, the fact an offer was not made, or not
11   communicated, at a mediation is not privileged.  *See Hart v. Larson*, Case No.: 3:16-cv-
12   01460-BEN-MDD, 2018 WL 4053317, at *4 (S.D. Cal. Aug. 24, 2018) ("[T]he Court
13   overruled Defendants' objections to the Kaufman Decl.'s discussion of settlement offers
14   *not* conveyed in August 2014 because settlement offers *not conveyed* are not writings and
15   communications made "for the purpose of, in the course of, or pursuant to, a mediation."
16   (emphasis in original, internal quotation marks omitted)); *Atmel Corp. v. St. Paul Fire &
17   Marine Ins. Co.*, 421 F. Supp. 2d 1265, 1272 (N.D. Cal. 2006) (evidence that insurer did
18   not fund settlement resulting from mediation is not privileged); *Doublevision Entm't, LLC
19   v. Navigators Specialty Ins. Co.*, No. C 14-02848 WHA, 2015 WL 370111, at *3 (N.D.
20   Cal. Jan. 28, 2015) (interrogatory asking insurer to "Identify, in full, why YOU would not
21   authorize a $200,000 settlement at the MEDIATION" was not privileged).[6]

- Paragraph 15 of exhibit 1 to the complaint, and exhibit I thereto: **DENIED**.  Defendants fail to demonstrate any nexus between this paragraph and exhibit and the mediation.  *See, e.g.*, *Wimsatt*, 152 Cal. App. 4th at 161 (holding that settlement communications that occurred

---

[6] The Court rejects defendants' arguments that its silence in the mediation is communicative.  While the Court recognizes that in some instances, "silence and other conduct can be communicative," such conduct generally pertains to adoptive admissions, which is not relevant to the matter here.  *See Chodosh v. Trotter*, No. D070952, 2017 WL 4020447, at *10 (Cal. Ct. App. Sept. 13, 2017).

14

1 "a month or a few days before the mediation, during a telephone call to schedule
2 depositions" may have occurred even if there was no mediation, and that, accordingly, the
3 statements were not made "for the purpose of, in the course of, or pursuant to mediation").
4 *See also Doublevision Entm't*, 2015 WL 370111, at *4 ("The email contained the word
5 mediation, but a mere reference to a mediation in the near future does not bring this email
6 within the scope of the privilege."). Further, Rash Curtis' counsel Mark Ellis's July 15,
7 2017 email does not constitute an "offer" of settlement, but was rather an explicit
8 statement that a "prior settlement" would not be "re-offered"; the absence of an offer, prior
9 to mediation, is not mediation privileged. *See Harman*, 2018 WL 1791915, at *2.
10 Moreover, the Court highlights that the statement itself reflects that Rash Curtis disclaims
11 any knowledge of the statement, suggesting it was not made in connection with the
12 mediation.

- Paragraph 16 of exhibit 1 to the complaint, and exhibit J thereto: **GRANTED IN PART**, **DENIED IN PART**. The fact that Rash Curtis exchanged a mediation brief on August 14, 2017 is not itself privileged. However, the remainder of the paragraph summarizing the content therein and the attached exhibit itself, which is a writing prepared by Rash Curtis for the purposes of mediation, are subject to the California mediation confidentiality privilege. *See Wimsatt*, 152 Cal. App. 4th at 158 ("Mediation briefs epitomize the types of writings which the mediation confidentiality statutes have been designed to protect from disclosure."). Perez does not otherwise demonstrate that an exception to the mediation privilege applies.

- Paragraph 17 of exhibit 1 to the complaint: **GRANTED IN PART**, **DENIED IN PART**. Perez's statement of offer made in the mediation is a statement that is subject to the California mediation confidentiality privilege. The remainder of the paragraph, noting the general details of the mediation, and that Rash Curtis walked out and made no settlement offer, is not a statement, writing, or communication that is subject to the mediation confidentiality provision. *See*, *supra*, *Harman*, 2018 WL 1791915, at *3; *Lotes Co.*, 2017 WL 282583, at *5; *Hart*, 2018 WL 4053317, at *4; *Atmel Corp.*, 421 F. Supp. 2d at 1272; *Doublevision*

15

*Entm't*, 2015 WL 370111, at *3.

- Paragraph 18 of exhibit 1 to the complaint, and exhibit K thereto: **GRANTED IN PART**, **DENIED IN PART**. Paragraph 18 and exhibit K include discussions of what Perez stated in the mediation itself, which would be subject to the California mediation confidentiality privilege. Defendants do not otherwise demonstrate that the statement in paragraph 18, "XL still did not make a counteroffer or express any interest in settlement," or the remainder of the email – other than those statements referencing offers communicated by Perez during the mediation – are subject to the mediation confidentiality privilege.[7]

- Paragraphs 20-21, and 23 of exhibit 1 to the complaint, and exhibits M and N thereto: **DENIED**. Defendants do not demonstrate a nexus between these paragraphs and the mediation that occurred on August 16, 2018. This is so where the emails themselves evidence a request to conduct further settlement discussions.

- Paragraph 22 of exhibit 1 to the complaint: **DENIED**. Defendants do not demonstrate any nexus between this paragraph and the mediation; moreover, the paragraph lists certain facts that are available on the public docket in *Perez I*.

- Paragraphs 26 and 27 of exhibit 1 to the complaint: **DENIED**. Defendants concede in their briefing and conceded at oral argument that statements made beyond September 18, 2017 would not be subject to the California mediation privilege. Moreover, neither of these paragraphs incorporate or reference any communications made during the mediation itself.

- Paragraphs 30 and 32 of exhibit 1 to the complaint: **GRANTED IN PART**, **DENIED IN PART**. Perez's reference in paragraph 32 to his offer of $875,000 made during the mediation is a communication that is subject to the California mediation privilege. The remaining

---

[7] Although defendants assert that the confidentiality agreement, which agrees to extend the 10-day period set out under the California mediation confidentiality provisions, lasted until September 18, 2017, defendants provide no evidence that the "mediation effort" was ongoing beyond the day of the mediation on August 16, 2017. Indeed, that the confidentiality agreement uses the singular "effort" instead of "efforts" suggests that the parties likely meant for any privilege to end once the mediation itself was terminated. Here, it is undisputed that the mediation ended on August 17, 2017. Thus, the Court concludes that statements beyond this date are not privileged unless otherwise divulging information that was shared during the mediation itself.

16

settlement offers predate the mediation and are not subject to the California mediation privilege. The paragraphs otherwise contain no other reference to writings or communications that would be protected by the privilege.

Accordingly, in light of the above, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike.

## IV. CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

(1) the motion to dismiss for lack of personal jurisdiction is **GRANTED**;

(2) Defendants XL America and XL Group are **DISMISSED** from this action for lack of personal jurisdiction;

(3) the motion to dismiss and/or stay is **DENIED**;

(4) the motion to strike is **GRANTED IN PART** and **DENIED IN PART**; and

(5) The following paragraphs and exhibits are **STRICKEN**:

   a. Paragraph 16 of exhibit 1 to the complaint, and exhibit J thereto in their entirety <u>except</u> for the first sentence of paragraph 16 "On August 14, 2017, the parties exchanged mediation briefs."

   b. Paragraph 17 of exhibit 1 to the complaint, the following sentences: "Perez's counsel offered to settle the case for $825,000. The parties hereto believe this offer was fair and reasonable. The offer was below the $3 million policy limit and was also below the $1 million purported TCPA sub-limit";

   c. Paragraph 18 of exhibit 1 to the complaint in its entirety <u>except</u> for the date and the sentence "XL still did not make a counteroffer or express any interest in settlement", and exhibit K thereto, the following statements: "It was your clients who demanded an extortionate amount at mediation.", "we made an offer at the mediation and", "Your last offer was $825,000, right?", and "Correct."

   d. Paragraph 32 of exhibit 1 to the complaint, the following part: "and (4) Perez's August 16, 2017 offer to settle for $825,000, which was rejected when XL

refused to make any counteroffer (*see* Exhibit K, at 6)."

**CONSISTENT WITH THIS ORDER:**

Perez shall file an amended complaint consistent with this Order by Monday, May 18, 2020. Substantive changes are not allowed. Perez shall provide counsel for Indian Harbor with a redline courtesy copy so that it can easily confirm the redactions and changes made. Indian Harbor shall file an answer to the complaint by June 1, 2020.

A case management conference is hereby scheduled for **June 29, 2020** at **2:00 p.m.** In light of the uncertainties with the ongoing coronavirus disease (COVID-19) pandemic, the parties are instructed to check the Court's scheduling notes to determine whether the conference will be held in person or by some alternate platform.

This Order terminates Docket Numbers 11, 13, and 14.

**IT IS SO ORDERED.**

Dated: May 11, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**